[No. 29948.  *En Banc.*  August 12, 1946.]

BOEING AIRCRAFT COMPANY, *Respondent,* v. RECONSTRUC-
TION FINANCE CORPORATION, *Defendant,* KING
COUNTY *et al., Appellants.*[1]

[1]Reported in 171 P. (2d) 838.

*Lloyd Shorett* and *Jess N. Rosenberg,* for appellants.

*Holman & Sprague* and *J. Paul Coie,* for respondent.

*Frank A. Grimsdell* and *Patrick M. Tammany, amici curiae.*

SIMPSON, J.—Plaintiff brought this action under the provisions of our uniform declaratory judgment act to determine the validity of taxes assessed against certain real property owned by the Reconstruction Finance Corporation and used by plaintiff under lease which provided that plaintiff should pay all property taxes lawfully assessed or imposed upon real property. The cause, tried to the court, resulted in the entry of a judgment declaring the taxes to be invalid. King county and Carroll Carter, its treasurer, have appealed to this court.

The assignments of error call in question the action of the trial court in making its findings of fact, conclusions of law, and the entry of its judgment.

The facts are as follows: Respondent, Boeing Aircraft Company, is a corporation engaged in the manufacture of airplanes. The Reconstruction Finance Corporation is a corporation chartered by the government of the United

States. Its stock is owned by the government and its officers were appointed by the president with the approval of the Senate of the United States.

On or about August 4, 1941, respondent entered into a lease agreement with the Defense Corporation, a division of Reconstruction Finance Corporation. The lease provided, among other things, that respondent would acquire and convey to the Reconstruction Finance Corporation a site near Renton, Washington, consisting of approximately seventy-five acres of land suitable as a location for an aircraft manufacturing plant. Respondent complied with that portion of the contract, and the land was deeded to Reconstruction Finance Corporation. Respondent, in the agreement of lease, agreed to pay an annual rental of one dollar, and in paragraph twenty, contracted

" . . . to pay to the proper authority, when and as the same become due and payable, . . . all taxes, assessments, and similar charges (other than local improvement assessments) which at any time during the term of this lease or any extension thereof may be lawfully taxed, assessed or imposed upon Defense Corporation or Lessee with respect to or upon the site, buildings or the Machinery, or any part thereof."

The assessor of King county entered all of the property upon his books for the year 1944-45, and has extended the tax against the same upon the tax rolls of King county in the manner provided by state law. Pursuant to statutory procedure, the assessor certified the tax rolls to the auditor of King county. The rolls were thereafter delivered to the county treasurer.

Respondent has refused to pay the taxes as not being lawfully assessed or imposed upon the property. Reconstruction Finance Corporation has at all times demanded that respondent pay the taxes and has further advised respondent that it will be held responsible for failure to secure all available discounts or rebates, as well as for all penalties which have or may accrue.

The one question before this court is: Were the taxes lawfully assessed or imposed upon the property in question?

■ It is a well-recognized rule that grants of immunity from taxation are to be strictly construed and every doubt resolved in the right to collect the tax. *Railroad Co. v. Loftin*, 105 U. S. 258, 26 L. Ed. 1042; *Pacific Co. v. Johnson*, 285 U. S. 480, 76 L. Ed. 893, 52 S. Ct. 424; *Hale v. State Board*, 302 U. S. 95, 82 L. Ed. 72, 58 S. Ct. 4.

15 U.S.C.A. (Sup.), Commerce and Trade, § 610, provides:

"Any and all notes, debentures, bonds, or other such obligations issued by the corporation shall be exempt both as to principal and interest from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority, except as provided in section 742a(a) of Title 31. The corporation, including its franchise, its capital, reserves, and surplus, and its income shall be exempt from all taxation now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority; except that any real property of the corporation shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed. The exemptions provided for in the preceding sentence with respect to taxation, the Metals Reserve Company, the Rubber Reserve sales, use, storage, and purchase taxes) shall be construed to be applicable not only with respect to the Reconstruction Finance Corporation but also with respect to (1) the Defense Plant Corporation, the Defense Supplies Corporation, the Metals Reserve Company, the Rubber Reserve Company, and any other corporation heretofore or hereafter organized or created by the Reconstruction Finance Corporation under section 606b of this title, as amended, to aid the Government of the United States in its national-defense program, (2) The RFC Mortgage Company, the Federal National Mortgage Association, and any other public corporation heretofore or hereafter organized by or at the instance of the Reconstruction Finance Corporation, and (3) the Disaster Loan Corporation, and any other public corporation which is now or which may be hereafter wholly financed and wholly managed by the Reconstruction Finance Corporation. Such exemptions shall also be construed to be applicable to the loans made, and personal property owned, by the Reconstruction Finance Corpora-

tion or by any corporation referred to in clause (1), (2) or (3) of the preceding sentence, but such exemptions shall not be construed to be applicable in any State to any buildings which are considered by the laws of such State to be personal property for taxation purposes. As amended June 10, 1941, c. 190, § 3, 55 Stat. 248."

See *Clifton v. State Board of Tax Appeals*, 126 N. J. L. 205, 17 A. (2d) 476.

In addition to the above statute, we must, in arriving at a decision in this case, examine the enabling act, and the constitutional and statutory provisions of this state. Our enabling act, Art. IV, provides in part as follows:

"And said conventions shall provide, by ordinances irrevocable without the consent of the United States, and the people of said states:—   . . .

"Second. That the people inhabiting said proposed states do agree and declare   . . .   that no taxes shall be imposed by the states on lands or property therein belonging to or which may hereafter be purchased by the United States, or reserved for its use.   . . ."

The constitution of the state of Washington, Art. XXVI, provides:

"Compact with the United States—The following ordinance shall be irrevocable without the consent of the United States and the people of this state:—

".   .   .   that no taxes shall be imposed by the state on lands or property therein belonging to or which may be hereafter purchased by the United States or reserved for use:   . . ."

Constitutional amendment 14 contains the following provisions:

"Property of the United States and of the state, counties, school districts and other municipal corporations, and credits secured by property actually taxed in this state, not exceeding in value the value of such property, shall be exempt from taxation."

Rem. Rev. Stat., § 11111 [P.P.C. § 979-403], states, among other things, that the following property shall be exempt from taxation:

"All property, whether real or personal, belonging exclusively to the United States, the state, any county or municipal corporation."

Rem. Supp. 1945, § 11150-1, provides:

"Notwithstanding anything to the contrary in the laws of the State of Washington, expressed or implied, the United States and its agencies and instrumentalities and their property are hereby declared to be taxable, and shall be taxed under the existing laws of this state or any such laws hereafter enacted, whenever and in such manner as such taxation may be authorized or permitted under the laws of the United States."

It is clear that the last-mentioned statute repealed by implication the first statute set out above.

■ Although Congress does not have the power to compel the state to tax Federal property, it certainly has the constitutional right to say what United States property, if any, may be taxed by the states. *Owensboro Nat. Bank v. Owensboro,* 173 U. S. 664, 43 L. Ed. 852, 19 S. Ct. 537; *Baltimore Nat. Bank v. State Tax Commission,* 297 U. S. 209, 80 L. Ed. 586, 56 S. Ct. 417; *Pacific Coast Dairy v. Dept. of Agriculture,* 318 U. S. 285, 87 L. Ed. 761, 63 S. Ct. 628.

In this case, Congress said real property shall be taxed, and personal property shall be exempt.

■■ In appellant's brief, we find the following:

"It is unthinkable that, under a system of government such as we have in the United States, a state may, by its laws or constitutional provisions, defeat the clearly expressed policy of Congress. The Supremacy Clause was intended to prevent such a result."

We cannot so hold, for to do so would effectively do away with the provisions of our state constitution by subjecting those provisions to be continually changed by acts of Congress. The constitution of the United States has not given that power to Congress, and Congress has only the powers expressly given it by the constitution of the United States. The American system of government is dual in nature, containing Federal and state sovereignties, each supreme within its appropriate sphere. The states do not get their power

from the Federal government, but from the constitution of the United States. They exercise those powers independently of the Congress of the United States. The Federal government has no power to control the power or authority of the state except as such power may have been expressly granted, or as may be necessary to maintain the acknowledged powers of the Federal government. True, Congress may determine the circumstances under which a state may be admitted into the Union, but that does not give it any powers to change or modify, either directly or indirectly, the provisions of the state constitution.

■ It is our conclusion that the question in this case must be resolved in favor of the imposition of the tax for two reasons; first, because of the provisions of the enabling act which provided for the admission of this state into the Union. That act at first had no binding effect, for it was no more than a proposition or offer of a contract. However, after the state had accepted the terms of the enabling act by framing and passing a constitution, and Congress had approved the constitution, and the president of the United States had issued a proclamation to that effect, each government was bound by the provisions of that enabling act.

■ The enabling act should be given a liberal, and not a narrow and restricted, construction for the purpose of carrying out its intent. *State ex rel. The Bookstore v. Potts,* 141 Wash. 110, 250 Pac. 1090.

■ In order to determine the meaning of the enabling act and our constitutional provisions, it is necessary to ascertain the intent of the framers of our constitution and that of Congress, first, in passing the enabling act, in the preparation of the constitution, and the acceptance of the state into the Union. That intent must be based upon the intent of the instruments considered as a whole. *State ex rel. State Capitol Commission v. Lister,* 91 Wash. 9, 156 Pac. 858.

■ The constitution must be construed in the sense in which the framers understood it in 1889. In other words, its meaning was fixed at the time it was adopted.

The rule is well stated in 11 Am. Jur. 674, Constitutional Law, § 61, as follows:

"The fundamental principle of constitutional construction is to give effect to the intent of the framers of the organic law and of the people adopting it. A constitutional clause must be construed reasonably to carry out the intention of the framers, which gives rise to the corollary that it should not be construed so as to defeat the obvious intent if another construction equally in accordance with the words and sense may be adopted which will enforce and carry out the intent. The intent must be gathered from both the letter and spirit of the document.

"It has been very appropriately stated that the polestar in the construction of Constitutions is the intention of the makers and adopters."

In *State ex rel. Mason County Logging Co. v. Wiley,* 177 Wash. 65, 31 P. (2d) 539, this court cited with approval the case of *Bay City v. State Treasurer,* 23 Mich. 499, in which it was stated:

" 'Constitutions are to be construed as the people construed them in their adoption, if possible, and the public history of the times should be consulted, and should have weight in arriving at that construction.' "

Accord: *State v. Brunn,* 22 Wn. (2d) 120, 154 P. (2d) 826.

The enabling act was approved February 22, 1889. Our constitution was framed August 22, 1889, and ratified by the people at an election held October 1, 1889. On November 11, 1889, President Harrison, in accordance with the provisions of the enabling act, proclaimed the admission of the state of Washington into the Union. At the times just mentioned, there was no method, aside from amending the constitution, of submitting a question to the people of this state. Neither the initiative nor the referendum was known or even thought of at that time. It is an inescapable conclusion that the framers of the constitution and the Congress of the United States intended that any agreement allowing Federal property to be taxed, would be arrived at by the passage of laws by the Congress of the United States and the legislature of the state of Washington. It is clearly apparent that the makers of our constitution had in mind that the people would speak through the mouth of the legislature in agreeing that Federal property might be taxed.

■ A second and more compelling reason for upholding the 1945 act and the Federal statute, is based upon the rule relative to taxing Federal properties. The general rule is that property of the United States—that is, its real and personal property which it holds as owner, and not merely by virtue of sovereign domination—is not subject to state taxation. This rule is founded on the general proposition that the states may not impede the Federal power. As many, if not most, of those operations involve the use of real and personal property, they could be effectually embarrassed by taxation.

It has been the usual practice, in admitting new states into the Union, that a provision be inserted in the enabling acts or the state constitutions that Federal property be exempt from taxation. Such exemptions are merely declaratory of what the law is, regardless of the provisions, and are unnecessary to establish the exemption of national property from state taxation.

The author of Willoughby on the Constitution of the United States, vol. 1, § 88, p. 154, has this to say concerning constitutional provisions such as contained in Art. XXVI, and amendment 14, of our state constitution:

"The principle that property belonging to the United States is not taxable by the States in which it is situated did not receive final judicial affirmation until 1885 in *Van Brocklin v. Tennessee*. [117 U. S. 151]. Prior to this decision it had quite generally been taken for granted that Federal property was thus exempt from State taxation, but in a number of cases Congress would seem to have implied that it was not confident upon this point since it incorporated into enabling acts for the admission of territories into the Union as States, the requirement that after admission the property of the United States should be exempt from State taxation. The effect of the decision in *Van Brocklin v. Tennessee* was, of course, to hold that these provisions were declaratory merely, and, therefore, superfluous. The fact that the lands concerned in this Tennessee case were acquired by the United States through sales for direct taxes levied by act of Congress and not expressly ceded by the States, was held immaterial."

That Federal property cannot be taxed without the consent of the Congress was clearly held in the case of *McCulloch v. Maryland*, 17 U. S. 315, 4 L. Ed. 579. In that case, it appeared that the state of Maryland had imposed a tax upon the issue of notes by a branch of the Bank of the United States doing business in that state. The Bank of the United States had been incorporated by Congress for the purpose of aiding in the fiscal operations of the government and for the issue of bank notes to be used as currency. In declaring the tax unconstitutional, Chief Justice Marshall laid down the following principles, long since uncontroverted and recognized as established law, that the taxing power of the state extends to every person and thing within its jurisdiction; that it does not extend to persons and things not within the state jurisdiction; that the government of the United States is supreme within its sphere; that in carrying out its enumerated powers the Federal government has power to employ and create such agencies as it sees fit; that these agencies are not within the states' jurisdiction (although operating in the states' territory); and that to allow the states any power to impede or burden by taxation the agencies of the Federal government would be to allow them to nullify the powers granted to the Federal government, since the power to tax involves the power to tax to the point of destruction, and by taxing the agencies of the Federal power to that point, the states would be able to defy and render nugatory the power itself.

We find an extended consideration of a question similar to ours in *Van Brocklin v. Tennessee*, 117 U. S. 151, 29 L. Ed. 845, 6 S. Ct. 670. In that case, it appeared that the United States owned some real property in the state of Tennessee. The land had been acquired by the United States as a result of nonpayment of Federal taxes and was not being devoted to any use. Tennessee attempted to levy and collect taxes on the land. The supreme court held the tax levy to be void. In passing upon the issue presented, the court stated:

"Upon the admission of every other State into the Union, the exemption of the lands of the United States from taxation by the State has been declared—sometimes in the form

of a condition imposed by Congress, and sometimes in the form of a proviso to a proposition to grant the State certain lands or money, offered for its acceptance or rejection—in phrases somewhat varying, but substantially similar to one another."

Calling attention to the rule that Federal property cannot be taxed regardless of the provisions of state constitutions or statutory enactments, the court said:

"The legislatures of most of the States have affirmed the same principle, by inserting in their general tax acts an exemption of property belonging to the United States. Such a provision, as has been well observed by the Supreme Court of Connecticut in *West Hartford v. Water Commissioners,* above cited, is not the foundation of the exemption, but is inserted only from abundant caution, and because the assessment of taxes is to be made by local officers skilled in the valuation of property, but presumably unlearned in legal distinctions.   44 Conn. 368."

The conclusion of the court follows:

"While the United States owned the land struck off to them for the amount of the taxes because no one would pay more for it, and until it was sold by the United States for a greater price, or was redeemed by the former owner, the United States held the entire title as security for the payment of the taxes; and it could not be known how much, if anything, beyond the amount of the taxes the land was worth.   To allow land, lawfully held by the United States as security for the payment of taxes assessed by and due to them, to be assessed and sold for State taxes, would tend to create a conflict between the officers of the two governments, to deprive the United States of a title lawfully acquired under express acts of Congress, and to defeat the exercise of the constitutional power to lay and collect taxes, to pay the debts and provide for the common defense and general welfare of the United States.

"The question whether the taxes laid under authority of the State can be collected in this suit depends upon the question whether they were lawfully assessed.   But all the assessments were unlawful, because made while the land was owned by the United States.   The assessments, being unlawful, created no lien upon the land.   Those taxes, therefore, cannot be collected, even since the plaintiffs in

error have redeemed or purchased the land from the United States.

"Whether the Supreme Court of Tennessee rightly construed the provisions of the Constitution and statutes of the State as not exempting from taxation land belonging to the United States, exclusive jurisdiction over which had not been ceded by the State, is quite immaterial, because, for the reasons and upon the authorities above stated, this court is of opinion that neither the people nor the legislature of Tennessee had power, by constitution or statute, to tax the land in question, so long as the title remained in the United States."

■ We hold that our constitutional provisions relative to taxes upon Federal property are not compelling, in that they do not bind this state to exempt from taxation property owned by the United States, and that in all cases Federal property shall be taxed by this state when consent is given by the Congress of the United States.

■ Congress having given that consent in so far as the property leased by Boeings is concerned, it is necessary to hold that the property leased by respondent is subject to taxes imposed by the King county officials.

The judgment is reversed, with instructions to enter a decree in conformity with this opinion.

ALL CONCUR.

---

September 26, 1946. Petition for rehearing denied.