[L. A. No. 24556.   In Bank.   Mar. 17, 1959.]

ROHR AIRCRAFT CORPORATION (a Corporation), Appellant, v. COUNTY OF SAN DIEGO et al., Respondents.

Glenn & Wright and Leroy A. Wright for Appellant.

James Don Keller, District Attorney and County Counsel, Carroll H. Smith, Deputy, Manuel L. Kugler, City Attorney (Chula Vista), and Meredith L. Campbell, for Respondents.

SPENCE, J.—Plaintiff, Rohr Aircraft Corporation, sought to recover property taxes paid to the defendants County of San Diego and City of Chula Vista under allegedly illegal assessments. From a judgment denying a refund, plaintiff appeals.

During the years for which recovery is sought, plaintiff occupied the land in question under a lease obligating it to pay "all taxes, assessments and similar charges . . . upon the leased premises." Plaintiff's lessors were the "Reconstruction Finance Corporation . . . and the United States of America, both acting by and through the General Services Administrator." While plaintiff concedes the taxability of its possessory interest, it maintains that taxes levied upon the realty itself were unlawful because of the general rule that lands owned by the United States of America or its instrumentalities are immune from state and local taxation. (*Clallam County* v. *United States*, 263 U.S. 341 [44 S.Ct. 121, 68 L.Ed. 328]; *Van Brocklin* v. *State of Tennessee*, 117 U.S. 151 [6 S.Ct. 670, 29 L.Ed. 845].) Defendants argue, however, that the property was owned by the Reconstruction Finance Corporation, that Congress had waived the tax immunity of such property (Reconstruction Finance Corporation Act, ch. 166, § 8, 61 Stats. 205 (1947), as amended, 15 U.S.C.A. § 607 (1948) (formerly Reconstruction Finance Corporation Act, ch. 8, § 10, 47 Stat. 9 (1932))), and that the assessments were therefore lawful.

In 1942 and 1943, plaintiff's predecessor, also named Rohr

Aircraft Corporation, conveyed the property in question to the Defense Plant Corporation, a subsidiary of the Reconstruction Finance Corporation (hereinafter sometimes referred to as the RFC). The Defense Plant Corporation improved the property and leased it to plaintiff's predecessor for the production of aircraft parts and assemblies during World War II. On July 1, 1945, the Defense Plant Corporation was dissolved and all of its assets were transferred to the RFC by operation of law. (Act of June 30, 1945, ch. 215, 59 Stat. 310, 15 U.S.C.A. § 611, n. (1948).) In October, 1945, the lease was terminated at Rohr's request, and there was evidence that the company then vacated the premises. On May 29, 1946, the RFC declared the property to be surplus to its needs and responsibilities pursuant to the Surplus Property Act of 1944. (§ 11, 58 Stat. 769.) Later in the year the War Assets Administration, a federal instrumentality designated as a surplus property disposal agency (see Surplus Property Act of 1944, ch. 479, § 10(a), 58 Stat. 769), accepted possession and control of the property pending its ultimate disposition. No deed was executed at that time, and legal title remained in the RFC. The functions of the War Assets Administration were subsequently transferred to the General Services Administration. (Federal Property and Administrative Services Act of 1949, ch. 288, § 105, 63 Stat. 381, 5 U.S.C.A. § 630c (Supp. 1958).)

In May, 1948, the former Rohr Aircraft Corporation began renting portions of the property on a month-to-month basis, and in September, 1949, its successor, the plaintiff, obtained the above-mentioned lease of the entire property. In accordance with its terms, plaintiff paid taxes on the land pursuant to defendants' assessments against the RFC as record owner for the fiscal years 1951-1952 through 1954-1955. In 1955 the RFC conveyed its interest to the United States.

Plaintiff's right to recover the amounts so paid depends on whether the leased premises were immune from local taxation or whether Congress had waived the federal immunity. The waiver in question provides, "[A]ny real property of the [Reconstruction Finance] Corporation . . . shall be subject to . . . county, municipal or local taxation to the same extent according to its value as other real property is taxed." (Reconstruction Finance Corporation Act, ch. 166, § 8, 61 Stat. 205 (1947), as amended, 15 U.S.C.A. § 607 (1948) (formerly Reconstruction Finance Corporation Act, ch. 8, § 10, 47 Stat. 9 (1932)).) ▮ Before the RFC's surplus property dec-

laration, this statute unquestionably subjected the land to local taxes. (*Reconstruction Finance Corp.* v. *Beaver County,* 328 U.S. 204 [66 S.Ct. 992, 90 L.Ed. 1172] ; *Boeing Aircraft Co.* v. *Reconstruction Finance Corp.,* 25 Wn.2d 652 [171 P.2d 838, 168 A.L.R. 539], appeal dismissed and cert. denied, 330 U.S. 803 [67 S.Ct. 972, 91 L.Ed. 1262].) Its taxable status was not changed by the mere declaration that it was surplus to the RFC's needs and responsibilities. (*Board of County Com'rs of Sedgwick County* v. *United States,* 105 F. Supp. 995, 1001.) Thus the sole question for determination is whether the land ceased to be "real property of the" Reconstruction Finance Corporation when control and responsibility were subsequently transferred to the War Assets Administration. The identical question has been presented in two previous cases.

In *Board of County Com'rs of Sedgwick County* v. *United States, supra,* 105 F.Supp. 995, the Court of Claims held that RFC surplus property was immune from local taxes once the War Assets Administration had accepted control of and accountability for the property. The court reasoned that "the waiver of constitutional immunity from taxes . . . was undoubtedly intended to apply to that real property of the corporation held by it in the performance of the duties and responsibilities imposed upon it by law. But by the . . . declaration of the property as surplus . . . the RFC declared that the property was surplus to its 'needs and responsibilities', and by . . . acceptance [of the War Assets Administration] was divested of all control and responsibility. At no time after the acceptance by the WAA . . . did the RFC or any of its employees have physical possession, control, or custody of the property. It had neither the use nor the right to use the property. It could not even withdraw the declaration of surplus property without the approval of the War Assets Administrator." (*Id.* at 1001.) Although the court recognized that the RFC continued to be the "owning agency" within the meaning of the Surplus Property Act (§ 3 (b), 58 Stat. 767), it viewed the RFC as holding no more than "a bare legal title for the use of the United States." (105 F. Supp. at 1001; see *United States* v. *Shofner Iron & Steel Works,* 9 Cir., 168 F.2d 286.) On the basis of this reasoning and the assumption that the RFC omitted to transfer title merely "as a matter of convenience to the Government and to minimize actual paper work and expense" (105 F.Supp. at 1001), the court concluded that "the purpose of the waiver

provision had been fully served when the property passed to the control of the WAA." (*Id.* at 1001-1002.)

██ In *Continental Motors Corp.* v. *Township of Muskegon,* 346 Mich. 141 [77 N.W.2d 370], the Supreme Court of Michigan rejected the reasoning of the Sedgwick case and came to an opposite conclusion on similar facts. The court declared that the congressional waiver of immunity "was intended to prevent prejudice to local economic conditions" and that the reason for the waiver persisted during the disposal process where the use of the property remained unchanged. (*Id.* at 149-150.) We are in accord with the result reached by the Supreme Court of Michigan in the cited case.

██ In providing for taxation of "real property of the" RFC, Congress must have intended to insure that RFC ownership of property would not withdraw important revenue sources from the local tax rolls. By enacting the Surplus Property Act of 1944 (58 Stat. 765), Congress expressed its desire to maintain competition, "to avoid dislocations of the domestic economy," and "to prevent . . . unusual and excessive profits being made out of surplus property." (58 Stat. 766.) These objectives are inconsistent with the asserted intent that RFC surplus property should be immune from taxation during the disposal process. While some of that property was ultimately to be transferred to tax-exempt entities such as federal agencies, local and state governments, and charitable organizations (58 Stat. 770-772), it was also anticipated that much of it would be returned to private hands. (58 Stat. 773-779.) Since RFC property was taxable at all times before it became surplus to the needs of the RFC, and since much of that property was destined to be sold to private persons and thereafter to be subject to local taxes, it cannot be held that Congress intended such property to be immune from taxation during the disposal process. Moreover, it appears that the disposal agencies, acting under similar reasoning, left legal title in the RFC not merely as a "matter of convenience," as the Court of Claims assumed, but for the sole purpose of continuing the tax immunity waiver until final disposition of the property. (See 32 Decs. Comp. Gen. 164, 166; Hearings on Amendment to the Federal Property and Administrative Services Act of 1949, as Amended, Before the House Committee on Government Operations, 84th Cong., 1st Sess. 126.) We conclude that the property did not

become immune from local taxes until legal title was transferred to the United States in 1955, and that plaintiff is therefore not entitled to a refund of the amounts paid. (Cal. Const., art. XIII, § 1; see *Boeing Aircraft Co.* v. *Reconstruction Finance Corp.*, *supra*, 25 Wn.2d 652, 663 [171 P.2d 838, 845, 168 A.L.R. 539], appeal dismissed and cert. denied, 330 U.S. 803 [67 S.Ct. 972, 91 L.Ed. 1262].)

■ Plaintiff contends, however, that we must reverse the judgment on the authority of the Sedgwick case, *supra,* 105 F.Supp. 995, even though we disagree with the decision of the Court of Claims. It is true that we are bound by interpretations of federal statutes by the United States Supreme Court. (U.S. Const., art. VI, cl. 2.) In our opinion, however, the decisions of the lower federal courts on federal questions are merely persuasive. (See *Stock* v. *Plunkett*, 181 Cal. 193, 194-195 [183 P. 657] ; *Continental Motors Corp.* v. *Township of Muskegon, supra,* 346 Mich. 141 [77 N.W.2d 370] ; *State ex rel. St. Louis, B. & M. Ry.* v. *Taylor,* 298 Mo. 474, 489-490 [251 S.W. 383, 387], aff'd, 266 U.S. 200 [69 L.Ed. 247, 45 S.Ct. 47, 42 A.L.R. 1232] ; note, 147 A.L.R. 857; 21 C.J.S., Courts, § 206, p. 365.) Although the parties have cited no decision of the United States Supreme Court directly passing upon the point, plaintiff argues that in any event our own decisions require us to follow the Court of Claims. Plaintiff relies on general statements to the effect that this court must accept the construction placed upon federal statutes by the federal courts. Those statements were made, however, either in the light of controlling United States Supreme Court decisions (*In re Hallinan,* 43 Cal.2d 243, 250-252 [272 P.2d 768] ; *Mackenzie* v. *Hare,* 165 Cal. 776, 779, 785 [134 P. 713, Ann. Cas. 1915B 261, L.R.A. 1916D 127]) or in cases where this court had no disagreement with the position taken by the lower federal courts. (*Pennsylvania R.R. Co.* v. *Midstate etc. Co.,* 21 Cal.2d 243, 245 [131 P.2d 544] ; *Dougherty* v. *California Kettleman etc. Inc.,* 9 Cal.2d 58, 88-89 [69 P.2d 155].)

■ Where lower federal court precedents are divided or lacking, state courts must necessarily make an independent determination of federal law. Any rule which would require the state courts to follow in all cases the decisions of one or more lower federal courts would be undesirable, as it would have the effect of binding the state courts where neither the reasoning nor the number of federal cases is found persuasive. Such a rule would not significantly promote uniformity in

federal law, for the interpretation of an act of Congress by a lower federal court does not bind other federal courts except those directly subordinate to it. (*United States* v. *Cincotta,* 146 F.Supp. 61, 62; *General Electric Co.* v. *Refrigeration Patents Corp.,* 65 F.Supp. 75, 81; *United States* v. *St. Clair,* 62 F.Supp. 795, 797; see also rule 19, Revised Rules of the Supreme Court, § 1(b).) We therefore conclude that the courts of this state may decline to follow the decision of the Court of Claims, as the reasoning of that decision is not persuasive.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and Schauer, J., concurred.

McCOMB, J.—I dissent. I would reverse the judgment for the reasons stated by Mr. Justice Coughlin in the opinion prepared by him for the District Court of Appeal in *Rohr Aircraft Corp.* v. *County of San Diego,* (Cal.App.) 330 P.2d 291.

Appellant's petition for a rehearing was denied April 15, 1959. McComb, J., was of the opinion that the petition should be granted.