[No. 39398.     En Banc.     August 7, 1969.]

MAKAH INDIAN TRIBE, *Appellant,* v. THE STATE OF WASHING-
TON, *Respondent.*\*

\*Reported in 457 P.2d 590.

*Ziontz, Pirtle & Fulle,* by *Robert L. Pirtle* and *Alvin J. Ziontz,* for appellant.

*The Attorney General* and *Jane Dowdle Smith, Assistant,* for respondent.

*Hovis, Cockrill & Roy,* by *James B. Hovis,* amicus curiae.

McGOVERN, J.—The Makah Indian Tribe brought this action against the State of Washington in declaratory form, seeking a judgment affirming its argument that the state has no authority to enforce its civil or criminal laws against members of the tribe on the reservation and declaring that reservation roads are not public highways of the state. The tribe appeals from an adverse judgment.

In 1889, the states of Washington, Montana, North Dakota and South Dakota were given provisional authority to become members of our Union of States. 25 Stat. 676 (1889). The enabling act provided as a prerequisite to admission that each such state seeking admission should hold a constitutional convention and provide among other things,

> by ordinances irrevocable without the consent of the United States and the people of said States:
>
> . . .
>
> That the people inhabiting said proposed States do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States; . . .

In response to that enabling act qualification, we thereafter adopted article 26 to the Washington State Constitution as follows:

> The following ordinance shall be irrevocable without the consent of the United States and the people of this state:
>
> . . .

That the people inhabiting this state do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries of this state, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States . . .

Then in 1953, our federal government moved affirmatively away from its position of retaining absolute control and jurisdiction over Indians and their lands. Public Law 83-280 (67 Stat. 588 (1953)) was passed, granting specific authority to the states of California, Minnesota, Nebraska, Oregon and Wisconsin to assume and exercise both civil and criminal jurisdiction over certain Indian tribes and lands within those states. The act authorized other states also to move into the field of control.

Sec. 6. Notwithstanding the provisions of any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this Act: *Provided,* That the provisions of this Act shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes as the case may be.

Sec. 7. The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof.

Responsively, our state legislature enacted Laws of 1957, ch. 240, p. 941, obligating this state to assume civil and criminal jurisdiction over Indians and Indian territory, reservations, country and lands within the state if and when

the tribe or its governing body adopted a resolution asking the state to do so. Thereafter, in 1963, the act was amended to read in part as follows:

The state of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session), but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States, unless the provisions of RCW 37.12.021 have been invoked, except for the following:

(1) Compulsory school attendance;

(2) Public assistance;

(3) Domestic relations;

(4) Mental illness;

(5) Juvenile delinquency;

(6) Adoption proceedings;

(7) Dependent children; and

(8) Operation of motor vehicles upon the public streets, alleys, roads and highways: *Provided further,* That Indian tribes that petitioned for, were granted and became subject to state jurisdiction pursuant to this chapter on or before March 13, 1963 shall remain subject to state civil and criminal jurisdiction as if chapter 36, Laws of 1963 had not been enacted.

RCW 37.12.010

The Makah Indian Tribe has not adopted a resolution asking the Governor to proclaim total state civil and criminal jurisdiction over its members and territory. As to that tribe then, such total state jurisdiction over its members exists only when the tribal members are on nontrust property or on property held in trust for them by the United States, and when the incident involves a matter of law within one of the eight enumerated exceptions.

Appellant argues that the state has no jurisdiction over enrolled members of its tribe or over lands belonging to the

tribe or to its members, whether held in trust or otherwise. The basis of the argument is threefold: (1) that the method employed by the state in assuming jurisdiction over the Makahs violated the terms of the enabling act and our state constitution; (2) that the method employed by the state in assuming jurisdiction over the tribe violated the terms of Public Law 83-280; and (3) that Public Law 83-280 does not permit a state to assume only partial jurisdiction over the tribe and its lands.

Preceding the state jurisdictional disclaimer over Indians and Indian lands in section 4 of our enabling act and article 26 of our constitution was the proviso that the ordinance was "irrevocable without the consent of the United States and the people of this state." The question raised by the tribe then is whether the *consent of the people* of this state to the revocation of that ordinance was properly granted when it was made by voice of the legislature rather than by popular vote of the people through constitutional amendment.

When Public Law 83-280 (67 Stat. 588 (1953)) was enacted, there were eight states whose enabling acts or constitutional provisions prohibited the states from exercising jurisdiction over the Indians within the state: Arizona, Montana, New Mexico, North Dakota, South Dakota, Oklahoma, Utah and Washington. Senate and House Committee Reports on H.R. 1063, 1953 U.S. Code Cong. & Ad. News 2412. Of those states, Arizona, Oklahoma, Utah and New Mexico have continued to reject the invitation to assume such jurisdiction. The remaining four states all joined the Union under the same 1889 enabling act and each assumed jurisdiction over the Indians in their state, but by different routes. North Dakota amended its constitution in 1958 and assumed jurisdiction over its Indians by statute in 1963 (NDCC § 27.19.01 (1963), *et seq.*). South Dakota assumed jurisdiction by legislative action (S.D. Laws of 1957, ch. 319, p. 427) as it was authorized to do under the terms of its compact with the United States. South Dakota Const.

art. 22. Montana also assumed jurisdictional control by statute (Repl. 5 RCM § 83-801 (1963), *et seq.*).

██ Washington, too, selected the legislative method and we have judicially approved the constitutionality of that procedure. In *State v. Paul*, 53 Wn.2d 789, 337 P.2d 33 (1959) we considered the identical question and reaffirmed the holding earlier explained in *Boeing Aircraft Co. v. Reconstruction Finance Corp.*, 25 Wn.2d 652, 171 P.2d 838, 168 A.L.R. 539 (1946) that as far as article 26 is concerned "the makers of our constitution had in mind that the people would speak through the mouth of the legislature." We said in *Paul*, at 793, and we repeat:

> We believe that this reasoning is still sound. It will be noted that the framers of our constitution, in enacting Art. XXVI, *supra*, adopted the identical words found in the enabling act. Apparently, this was done to conform with the requirements imposed by Congress for admission of Washington state into the Union. Congress did not require that this compact clause be irrevocable, absent a Washington state constitutional amendment. Rather, Congress insisted on vilateral action by the people of the United States (speaking through Congress) and the people of the state of Washington (speaking through the legislature).

Of additional import is *Quinault Tribe of Indians v. Gallagher*, 368 F.2d 648 (9th Cir. 1966). There, the Quinaults sought declaratory and injunctive relief to prevent the state of Washington from asserting jurisdiction over them under authority of RCW 37.12 as amended. They argued that the "people" of this state within the meaning of article 26 can speak only by constitutional amendment and not through the legislature. The federal court considered that argument and said, at 657:

> This contention rests on the premise that, within the contemplation of Congress, a state is powerless to manifest the consent of its "people" by legislative action, but may do so only by constitutional amendment, at least where the waiver is set forth in the state constitution.
>
> Assuming, without deciding, that this provision of the enabling act should be considered federal and not local law, we hold that it does not require that the consent of

the "people" of Washington be manifested only by a constitutional amendment. As we stated above, all that concerned Congress was that the consent of the people be evidenced in some manner valid and binding under state law. The *Paul* case establishes that this was accomplished by the 1957 and 1963 legislative enactments.

We are of the view that the reasoning set forth in the *Boeing, Paul* and *Quinault* cases is logical and sound. We therefore hold that the legislative method of assuming state civil and criminal jurisdiction over the Makahs as provided in RCW 37.12 was proper and not in violation of the provisions of our enabling act or state constitution.

Nor was it a violation of the method prescribed in Public Law 83-280 for the assumption of state civil and criminal jurisdiction over the Makahs. The tribe argues that such law, in addition to our enabling act and state constitution, necessitates a constitutional amendment before jurisdiction can be assumed by the state. The basis for the argument is section 6 of the act (67 Stat. 590, § 6 (1953)). Such argument was disposed of by the federal court in *Quinault* when it said, at 656:

> Inasmuch as the Washington state disclaimer of jurisdiction was set forth as Article 26 of the state constitution, it is understandable that congressional spokesmen assumed that such disclaimer could be removed only by a constitutional amendment. But the underlying concern of Congress, we think, was not that a state disclaimer be removed in any particular way, but that it be removed in some way which would be valid and binding under state law, before federal jurisdiction be relinquished. Accordingly, we do not construe this legislative history as reading into Public Law 280 a requirement that Washington can remove its disclaimer only by a state constitutional amendment.

And then it added: "In our opinion, these state legislative enactments, upheld as to validity by the state supreme court, are in full compliance with the federal requirements." We agree with that conclusion.

■ It is next argued that RCW 37.12 as amended is invalid because it constitutes only a partial assumption of

jurisdiction over the Makahs, whereas the authorizing legislation (Public Law 83-280) requires the state to take total state jurisdiction or none at all. Again, this argument was raised in *Quinault* and disposed of in that cause. We adopt the reasoning of that court as applicable here:

We do not read that act [RCW 37.12] as constituting only a partial assumption of jurisdiction. The state therein indicates its willingness to extend criminal and civil jurisdiction over all Indians and Indian territory, reservations, country and lands within the state, it being provided, however, that as to some matters concerning some Indians, there must first be a tribal resolution and a gubernatorial proclamation. In chapter 240, Laws of 1957, this Indian resolution and governor's proclamation procedure applied to all exertions of state jurisdiction.

In our opinion, the indicated condition precedent to the exertion of state jurisdiction as to some matters concerning some Indians involves no violation of Public Law 280. If the [Makah] Tribe of Indians feels aggrieved because state jurisdiction is not presently being exerted to the full extent possible under chapter 36, all it has to do is provide the governor with a tribal resolution of the kind called for in section 5 of that act (RCW 37.12.021). A governor's proclamation would necessarily follow, and a full exertion of state jurisdiction would be achieved.

■ And, finally, it is urged that the state has no jurisdiction over the roads on the Makah Indian Reservation because the roads lie on lands held in trust by the United States for the tribe or for individual allotees of the tribe. It is pointed out that article 2 of the United States Treaty with the Makah Tribe of Indians dated January 31, 1855 (12 Stat. 939 (1863)), "reserved for the present use and occupation of the said tribe the following tract of land . . . which said tract shall be set apart . . . and marked out for their exclusive use", and that such "exclusive use" prohibits state interference. We point out, however, that another portion of the same article further provides that "if necessary for the public convenience, roads may be run through the said reservation."

Thus, the federal government reserved to itself the right in the Treaty to build roads on the reservation where nec-

essary for the public convenience, and the record before us sufficiently sustains the argument that the roads in question were built by the government for that purpose. Additionally, 25 C.F.R. § 162.6 (1968), concerning roads of the Bureau of Indian Affairs, which would include the roads here in question, provides that the "Roads subject to the regulations in this part shall be open for free public use."

The state does not claim title to the roads. It merely asserts that they are public roads by virtue of the foregoing authorities, and therefore vehicles being operated on them are subject to jurisdictional control of the state under the terms of RCW 37.12.010.

The judgment of the trial court is affirmed.

All concur.