[No. 35005.   *En Banc.*   March 26, 1959.]

THE STATE OF WASHINGTON, *Plaintiff and Relator,* v. JANICE
PAUL, *Defendant,* THE SUPERIOR COURT FOR SNOHOMISH
COUNTY, *Charles R. Denney, Judge, Respondent.*[1]

*Arnold R. Zempel, R. C. Jefferson, The Attorney General,
Mitchell Doumit* and *E. P. Donnelly, Assistants,* for relator.

*Newell Smith,* for respondent.

*Charles P. Moriarty, Richard F. Broz, Raymond C. Coulter,* and *Leon Jourolmon, amici curiae.*

FINLEY, J.—Janice Paul, an Indian, is a member of the Skagit tribe and resides on the Tulalip Indian reservation

[1]Reported in 337 P. (2d) 33.

in Snohomish county. She is subject by treaty to the jurisdiction of the Tulalip Indian Corporation.

By information, Janice Paul was charged with the crime of second degree assault. The acts which are alleged to have constituted the assault occurred on the Tulalip reservation, and the person alleged to have been assaulted is an Indian.

A motion for dismissal of the action was filed after the arraignment of Janice Paul. It urged that the superior court for Snohomish county had no jurisdiction of the person of the defendant or the subject matter of the action. In disposing of the matter, the trial judge ordered the cause dismissed, with prejudice, on the ground of lack of jurisdiction, holding chapter 240, Laws of 1957, p. 941, to be unconstitutional. This created an emergent situation respecting law enforcement, peace and order in certain localities adjacent to or embracing Indian reservations in the state of Washington. Consequently, this court granted the state's petition for certiorari.

The constitutionality of chapter 240, *supra,* should be considered in the light of several constitutional provisions and in relation to certain legislative enactments leading up to the passage of chapter 240, *supra.*

It was in 1889 that the Congress of the United States admitted the states of Washington, North Dakota, South Dakota and Montana into the Union; 25 Stat. 676. The enabling act provided, *inter alia,* for a constitutional convention in the state of Washington. It further provided:

" . . . And said conventions shall provide, by ordinances irrevocable without the consent of the United States and the *people of said States:*

" . . .

"Second. That the people inhabiting said proposed States do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, *and said Indian*

*lands shall remain under the absolute jurisdiction and control of the Congress of the United States*; that the lands belonging to citizens of the United States residing without the said States shall never be taxed at a higher rate than the lands belonging to residents thereof; that no taxes shall be imposed by the States on lands or property therein belonging to or which may hereafter be purchased by the United States or reserved for its use. . . . " (Italics ours.)

In compliance with the enabling act, Art. XXVI of the Washington state constitution provided as follows:

"COMPACT WITH THE UNITED STATES

"The following ordinance shall be irrevocable without the consent of the United States and the *people of this state*:

" . . .

"Second. That the people inhabiting this state do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries of this state, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, *and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States* and that the lands belonging to citizens of the United States residing without the limits of this state shall never be taxed at a higher rate than the lands belonging to residents thereof; and that no taxes shall be imposed by the state on lands or property therein, belonging to or which may be hereafter purchased by the United States or reserved for use: . . . " (Italics ours.)

In 1953, Congress enacted Public Law 280 (67 Stat. 588, 590), consenting to the assumption of jurisdiction over Indians by the states. The pertinent sections of Public Law 280, *supra*, provide:

"Sec. 6. Notwithstanding the provisions of any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this Act: *Provided,* That the

provisions of this Act shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes as the case may be.

"Sec. 7. The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof."

Supplementing Congressional enactment of Public Law 280, *supra*, our legislature enacted chapter 240, Laws of 1597, p. 941. The following portion of chapter 240 is significant:

"SECTION 1. The state of Washington hereby obligates and binds itself to assume, as hereinafter provided, criminal and civil jurisdiction over Indians and Indian territory, reservation, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session)."

*Inter alia,* chapter 240, *supra,* provides that the state of Washington shall not assume jurisdiction over an Indian tribe in this state until such tribe expresses a desire for its people to be subject to the jurisdiction of the state of Washington. The procedure is specified. A tribe may petition the governor of the state. The governor then may issue a proclamation to the effect that the state of Washington assumes jurisdiction over the petitioning tribe.

Subsequent to the enactment of chapter 240, *supra,* the Tulalip Indian Corporation petitioned the governor to place its tribe under the jurisdiction of the state of Washington. The governor proclaimed the assumption of jurisdiction shortly thereafter, as provided in chapter 240, *supra.*

Defendant asserts that chapter 240, *supra,* violates Art. XXVI of the Washington state constitution; consequently, that it is unconstitutional. The basic question which defendant's contention raises in the instant case is whether "the consent of the people" of this state (in terms of Art. XXVI, *supra*) may be effectuated or accomplished by

action of the legislature; or whether it must be accomplished, if at all, through action by the people of the state of Washington in voting to amend the state constitution.

The same question was before the court in *Boeing Aircraft Co. v. Reconstruction Finance Corp.* (1946), 25 Wn. (2d) 652, 171 P. (2d) 838, 168 A. L. R. 539. Therein, the court was concerned with another portion of Art. XXVI, *supra;* namely, the provision that, without the consent of the United States and the people of this state,

" ' . . . no taxes shall be imposed by the state on lands or property therein belonging to or which may be hereafter purchased by the United States or reserved for use: . . . ' "

In the *Boeing* case, *supra,* the court clearly held that the legislature could effect or accomplish consent of the people of this state, within the meaning of Art. XXVI, *supra.* The reasoning of the court, in part, was that

"The enabling act was approved February 22, 1889. Our constitution was framed August 22, 1889, and ratified by the people at an election held October 1, 1889. On November 11, 1889, President Harrison, in accordance with the provisions of the enabling act, proclaimed the admission of the state of Washington into the Union. At the times just mentioned, there was no method, aside from amending the constitution, of submitting a question to the people of this state. Neither the initiative nor the referendum was known or even thought of at that time. It is an inescapable conclusion that the framers of the constitution and the Congress of the United States intended that any agreement allowing Federal property to be taxed, would be arrived at by the passage of laws by the Congress of the United States and *the legislature of the state of Washington.* It is clearly apparent that the makers of our constitution had in mind that *the people would speak through the mouth of the legislature in agreeing that Federal property might be taxed.*" (Italics ours.)

We believe that this reasoning is still sound. It will be noted that the framers of our constitution, in enacting Art. XXVI, *supra,* adopted the identical words found in the enabling act. Apparently, this was done to conform with the requirements imposed by Congress for admission

of Washington state into the Union. Congress did not require that this compact clause be irrevocable, absent a Washington state constitutional amendment. Rather, Congress insisted on bilateral action by the people of the United States (speaking through Congress) and the people of the state of Washington (speaking through the legislature).

■ In the present case it is factually significant that Congress has consented to the assumption of jurisdiction over the members of Indian tribes by the states; *provided,* of course, that proper state action is taken consenting thereto. Our state legislature, by enacting chapter 240, *supra,* has spoken for the people of the state, supplementing the action by Congress. Pursuant to the act, the Tulalip Indian tribe petitioned the governor for placement under state jurisdiction. The governor has proclaimed this jurisdiction. It is our conclusion that the state of Washington now has jurisdiction over the Tulalip Indian tribe and, more specifically, over the defendant in this case. Accordingly, it follows that the judgment of the trial court should be reversed. It is so ordered.

MALLERY, DONWORTH, ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur.

WEAVER, C. J. and HILL, J. concur in the result.

---

May 4, 1959. Petition for rehearing denied.