The **QUINAULT TRIBE OF INDIANS OF** the **QUINAULT RESERVATION IN** the **STATE OF WASHINGTON,** on its own behalf and on behalf of its members, and James Jackson, Alice Chenois, Phillip Martin, John Shale, W. D. Petit, Bennie Charley, Frank Capoeman and Jessie Curley, on their own behalves and on behalf of the members of the Quinault Tribe, Appellants,

v.

A. M. **GALLAGHER,** individually and as Sheriff of Grays Harbor County in the State of Washington, John J. O'Connell, individually and as Attorney General of the State of Washington, Albert D. Rosellini, individually and as Governor of the State of Washington, Appellees.

No. 19868.

United States Court of Appeals
Ninth Circuit.

Sept. 19, 1966.

On Rehearing Nov. 10, 1966.

Charles A. Hobbs, Wilkinson, Cragun & Barker, Washington, D. C., LeSourd & Patten, Seattle, Wash., Gladys Phillips, Aberdeen, Wash., for appellants.

John J. O'Connell, Atty. Gen. of Wash., Jane Dowdle Smith, Asst. Atty. Gen., Olympia, Wash., L. Edward Brown, Pros. Atty., Montesano, Wash., for Grays Harbor County.

Fred M. Vinson, Jr., Asst. Atty. Gen., Robt. S. Erdahl, Marvin H. Helter, Attys., Dept. of Justice, Washington, D. C., for amicus curiae.

Before BARNES and HAMLEY, Circuit Judges, and MATHES, District Judge.

HAMLEY, Circuit Judge:

The Quinault Tribe of Indians and several individual members of the tribe are plaintiffs in this action for a declaratory judgment and injunctive relief. They seek a declaration that the state of Washington has no authority to enforce its criminal and civil laws against the Quinault Indians on the Quinault Indian Reservation, and an injunction restraining the enforcement of state laws on the reservation. The defendants are the sheriff of Grays Harbor County, the state Attorney General, and the Governor of the state of Washington. This appeal is from an order entered by the district court granting defendants' motion to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

The Quinault Indian Reservation, created pursuant to the Treaty of Olympia, ratified by Congress in 1859 (12 Stat. 971), is located on the Pacific coast near Grays Harbor in the state of Washington. The boundaries of the reservation were confirmed on November 4, 1873. 1 Kappler 923–924. In 1889, Congress authorized organization of the state of Washington and its admission into the Union. As a condition of admission the enabling act required that the new state disclaim any interest in Indian lands and affirm that such lands would remain under the "absolute jurisdiction and control of the Congress * * *." 25 Stat. 676, 677 (1889). Accordingly, a disclaimer of jurisdiction, substantially identical to the one contained in the enabling act, was included in Article 26 of the Washington state constitution.

In 1953, federal legislation was enacted to enable states to supplant, in large measure, federal jurisdiction over offenses in Indian country, and over civil causes of action which arise in Indian country. Public Law 280, 67 Stat. 588 (1953). Under sections 2 and 4 of this act (18 U.S.C. § 1162, 28 U.S.C. § 1360 [1964]), Congress granted several states, not including Washington immediate jurisdiction of this kind in designated Indian country located within those states. Under section 6 of the 1953 act, Congress authorized states with constitutional or statutory impediments to the assumption of such jurisdiction to remove these impediments and assume jurisdiction. Under section 7 of the act, Congress authorized any other state to extend jurisdiction of this kind to Indian country lying within those states.

Because of Washington's constitutional disclaimer of jurisdiction over Indians, section 6 of Public Law 280 is applicable to that state. Purporting to act pursuant to the authority conferred under that section, the Washington legislature enacted chapter 240, Laws of 1957 (RCW 37.12).

It was provided in this act, with exceptions not here relevant, that whenever the governor of the state shall receive from the tribal council or other governing body of any Indian tribe a resolution

expressing its desire that its people and lands be subject to the criminal and civil jurisdiction of the state, the governor shall issue a proclamation, after which the state shall assume such jurisdiction. Under this act, state jurisdiction thus extended to Indians and Indian lands was to be exerted to the same extent as exerted elsewhere in the state.[1]

On April 22, 1958, a body purporting to be the "Quinault Indian Tribal Council" enacted a resolution expressing the desire that the criminal and civil jurisdiction of the state of Washington be extended to include the Quinault Indian Tribe and Reservation. Pursuant to this resolution, the governor of the state, on May 15, 1958, issued a proclamation of the kind called for by section 2 of chapter 240 (RCW 37.12.020), purporting to extend state jurisdiction to that reservation effective July 14, 1958.

After the proclamation was issued, but prior to its effective date, sixty-eight members of the Quinault Indian Tribe purported to repudiate the action of April 22, 1958, referred to above. The proclamation, however, was not then rescinded, and the validity of the proclamation and of the Quinault resolution upon which it was based, were upheld in State v. Bertrand, 61 Wash.2d 333, 378 P.2d 427.

In 1963, the state legislature enacted chapter 36, Laws of 1963, amending chapter 240, Laws of 1957. Under the 1963 act, the state of Washington purported to invoke immediate criminal and civil jurisdiction over some Indians and Indian territory, reservations, country and lands within the state, without the need of a prior Indian resolution and a gubernatorial proclamation. It was provided, however, that with respect to Indians on tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States, such resolution and proclamation procedure must be followed in order to invoke state jurisdiction, except with regard to eight categories of problems. RCW 37.12.010 as amended, 37.12.021.[2]

The 1963 act contains a savings clause. RCW 37.12.010. It provides that Indian tribes that petitioned for, were granted and became subject to state jurisdiction pursuant to chapter 240, Laws of 1957, on or before March 13, 1963, shall remain subject to state civil and criminal jurisdiction as if the 1963 act had not been enacted. The Quinault Indian Tribe was thus covered by the savings clause.[3]

This action was commenced on June 5, 1964. Jurisdiction was asserted under 28 U.S.C. § 1343(3), and Rev.Stat. § 1979 (1875) 42 U.S.C. § 1983 (1964) [Civil Rights Act], and under 28 U.S.C. § 1331 (1964) (federal question). In ordering dismissal of the action the district court held that jurisdiction to entertain the suit was not conferred by these statutes. Defendants argue that the court erred in so ruling.

With regard to jurisdiction under the Civil Rights Act, plaintiffs assert that they seek vindication of rights secured to them by the Treaty of Olympia, ratified in 1859, the 1889 enabling act, and Public Law 280, enacted in 1953.

1. The validity of this statute, under the state constitution, was upheld in State v. Paul, 53 Wash.2d 789, 337 P.2d 33.

2. These categories are: (1) compulsory school attendance; (2) public assistance; (3) domestic relations; (4) mental illness; (5) juvenile delinquency; (6) adoption proceedings; (7) dependent children; and (8) operation of motor vehicles upon public streets, alleys, roads and highways.

3. Appellant advises us that on January 12, 1965, which was subsequent to the entry of the order dismissing this action, the governor of Washington rescinded his 1958 proclamation concerning the Quinault Indians. The effect of this action was to predicate continuing state jurisdiction of the Quinaults on the 1963 act, which, in the absence of a new Indian resolution and proclamation, is limited as indicated above. The validity of this action by the governor, considered in light of the savings clause referred to above, has apparently not been tested in the courts of Washington.

The substantive provision of the Civil Rights Act upon which plaintiffs rely is 42 U.S.C. § 1983. This statute provides the basis for causes of action relating to the deprivation of rights, privileges, or immunities secured " * * * by the Constitution and laws. * * * " The jurisdictional provision of the Civil Rights Act which plaintiffs invoke is 28 U.S.C. § 1343(3), which relates to any right, privilege or immunity secured " * * * by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; * * * ."

We will assume, without deciding, that rights secured by Indian treaties ratified by Congress, and enabling acts and statutes enacted by Congress, as well as rights secured by the Constitution, are subject to vindication under the provisions of the Civil Rights Act referred to above.[4] The question remains whether any of these laws secure a right, privilege, or immunity within the meaning of the Civil Rights Act. It may be that freedom of the Quinault Indians from state criminal or civil jurisdiction is, in some sense, a right, privilege or immunity. But plaintiffs must still establish that this freedom is "secured" to them by one or more of the laws upon which they rely.

The provision of the treaty upon which plaintiffs rely is Article II, reading as follows:

"Article II. There shall, however, be reserved, for the use and occupation of the tribes and bands aforesaid, a tract or tracts of land sufficient for their wants within the Territory of Washington, to be selected by the President of the United States, and hereafter surveyed or located and set apart for their exclusive use, and no white man shall be permitted to reside thereon without permission of the tribe and of the superintendent of Indian affairs or Indian agent."

Under this provision white men are forbidden to reside on the reservation without permission. But the quoted language does not deal with the matter of jurisdiction over criminal offenses committed within, or civil causes of action arising within, the Quinault Indian Reservation. We hold that this treaty does not provide, for the Quinaults, freedom from state jurisdiction of the kind described. It therefore does not secure to them a relevant right, privilege or immunity which may be vindicated in a civil rights action.

It is also our opinion that neither the enabling act, nor Public Law 280, evince an intent on the part of Congress to bestow upon the Quinaults freedom from state criminal and civil jurisdiction. By virtue of the enabling act, Washington was disabled from asserting jurisdiction over Indian lands without the consent of Congress and people of the state. In Public Law 280, Congress manifested the consent necessary for state assumption of jurisdiction. But these laws are not framed in terms of rights for Indians. Rather, they are concerned with federal-state relations in the area of criminal and civil jurisdiction.

We accordingly hold that the district court did not have jurisdiction under the Civil Rights Act.

With regard to jurisdiction under 28 U.S.C. § 1331, plaintiffs contend that they have raised three substantial federal questions, namely: (1) whether Public Law 280 made it a mandatory condition to the assumption of state jurisdiction in a state having a constitutional provision such as Article 26 of the Washington constitution, that the state amend its constitution to remove a disclaimer clause; (2) whether the enabling act requires Washington to amend Article 26 of its constitution before assuming jurisdiction over the Quinault Indian Tribe; and (3) whether Public Law 280 precludes Washington from extending what plaintiffs term "partial" instead of "com-

---

4. As to this, see Bomar v. Keyes, 2 Cir., 162 F.2d 136, 138–139; Dyer v. Kazuhisa Abe, D.C.Hawaii, 138 F.Supp. 220, re-versed on other grounds, 9 Cir., 256 F.2d 728.

plete" jurisdiction to the Quinault Indian Reservation.

In determining whether a federal question is presented, a general test often relied upon is stated in Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205, reading as follows:

"3. A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends." [5]

Measured by this test, any one of the three issues referred to above could invoke federal question jurisdiction under 28 U.S.C. § 1331. The right asserted by plaintiffs has its origin in the enabling act, and in Public Law 280. The determination of that right requires the resolution of a real and substantial dispute or controversy respecting the construction or effect of those laws in connection with each of these three issues.

■ District court jurisdiction under 28 U.S.C. § 1331 requires, however, not only that the action arise under the Constitution, laws or treaties of the United States, but also that the "matter in controversy" exceed the sum or value of ten thousand dollars. In their motion to dismiss, defendants asserted that the court lacked jurisdiction under section 1331 because, among other things, " * * * it appears on the face of the complaint that no amount of money is in controversy. * * *"

■ Plaintiffs alleged in their complaint that "(t)he matter in controversy exceeds the value of $10,000, exclusive of interests and costs. * * *" This is a sufficient allegation as to the sum or value of the matter in controversy unless the complaint contains other allegations which make it apparent that the

pleading on its face does not state the requisite amount. Gibbs v. Buck, 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111; KVOS, Inc. v. Associated Press, 299 U.S. 269, 277, 57 S.Ct. 197, 81 L.Ed. 183; 1 Moore, Federal Practice § 0.92(1) at 834. The complaint contains no prayer for damages nor any allegation indicating that a property right of the plaintiffs is involved in the suit. In view of the circumstances stated below, however, we are not called upon to decide whether the allegation as to sum or value of the matter in controversy is sufficient.

In their motion to dismiss, defendants specifically challenged the jurisdictional amount. In resisting that challenge, plaintiffs filed a memorandum in which they disclosed the nature of the evidence they would submit at a trial bearing on the sum or value of the "matter in controversy." According to this disclosure, under state jurisdiction, the Quinaults would receive, at most, $6,500 worth of state law enforcement in a given year, and no tribal or federal law enforcement; but under federal jurisdiction the tribe would receive "law and order" costing many times that amount. In addition, under state jurisdiction, the tribe would lose revenues to which it is "entitled" from tribal court criminal fines and civil court cost fees exceeding ten thousand dollars over several years.

■■ By "matter in controversy" is meant the subject of litigation, the matter upon which the issue is brought and issue is joined. Smith v. Adams, 130 U.S. 167, 175, 9 S.Ct. 566, 32 L.Ed. 895. The value of the right sought to be gained determines the amount in dispute. Federated Mutual Implement and Hardware Insurance Company v. Steinheider, 8 Cir., 268 F.2d 734, 738.

If the Quinaults are entitled as a matter of right to have the United States pay for law enforcement in any given amount, or are entitled, as a matter of right, to receive revenues from operation of tribal

5. This statement was cited with approval in Littell v. Nakai, 9 Cir., 344 F.2d 486, 488; and South Side Theatres v. United

West Coast Theatres Corp., 9 Cir., 178 F.2d 648, 649.

courts in any given amount, then the right to receive such benefits and revenues may be said to be a "matter in controversy" within the meaning of section 1331.

In fact, however, any amount paid by the United States for law enforcement on the reservation, in the event state jurisdiction is withdrawn, rests entirely within the discretion of the federal government. Absent state jurisdiction, the tribe would have no enforceable right to have the federal government pay any particular amount for law enforcement on the reservation. Nor has the tribe any effective control over the amount of revenues which, absent state jurisdiction, might be received from operation of tribal courts, nor any present right to receive such revenues.

 The hoped-for benefit of federal expenditures for law enforcement, and the hoped-for revenues from operation of tribal courts, are not rights being asserted here. They are not referred to in the complaint and, had a responsive answer been filed, no legal or factual issue would have been drawn as to them. Any such benefits or revenues realized as the result of withdrawal of state jurisdiction, would be purely collateral to the actual right asserted—the right to be free of state jurisdiction. As the Supreme Court said in Opelika City v. Daniel, 109 U.S. 108, 3 S.Ct. 70, 27 L.Ed. 873, following Elgin v. Marshall, 106 U.S. 578, 1 S.Ct. 484, 27 L.Ed. 249, jurisdiction depends upon the matter directly in dispute in the particular cause, and the court is not permitted, for the purpose of determining its sum or value, to estimate its collateral effect.

We hold that the district court properly determined, or should have determined, as a matter of law, that accepting as true the tendered evidence, the matter here in controversy does not exceed the sum or value of ten thousand dollars, and that the court is therefore without jurisdiction. 28 U.S.C. § 1331.

In view of this ruling we do not reach the question of whether the complaint

fails to state a claim upon which relief can be granted.

Affirmed.

On Petition for Rehearing

Before BARNES and HAMLEY, Circuit Judges, and MATHES, District Judge.

HAMLEY, Circuit Judge:

In their complaint herein, plaintiffs asserted jurisdiction under 28 U.S.C. § 1343(3) (1964) and Rev.Stat. § 1979 (1875) 42 U.S.C. § 1983 (1964) (Civil Rights Act), and under 28 U.S.C. § 1331 (1964) (federal question). The district court held that it did not have jurisdiction under these statutes and alternatively held that, if it did have jurisdiction, the action must nevertheless be dismissed because the complaint fails to state a claim on which relief can be granted. On appeal both of these alternative rulings were questioned, and written and oral argument was had thereon.

In our opinion, filed herein on September 19, 1966, we held that the district court correctly determined that it did not have jurisdiction under the statutes referred to above. We therefore affirmed without reaching the alternative ground for dismissing the action.

In a petition for rehearing, filed herein on October 19, 1966, plaintiffs call our attention to the fact that, on October 10, 1966, a new jurisdictional statute was enacted, especially applicable to Indian tribes. This statute is Public Law 89–635, 80 Stat. 880 (1966), codified as 28 U.S.C. § 1362, the pertinent part of which reads as follows:

"§ 1362. *Indian tribes*

"The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States."

In their petition for rehearing, plaintiffs assert that the Quinault Tribe of

Indians has, as required by section 1362, a governing body duly recognized by the Secretary of the Interior. They also argue that the new jurisdictional statute is applicable to cases, such as this, which are pending on appeal when the statute was enacted. Plaintiffs therefore ask us to hold that the district court had jurisdiction under the new statute, and to proceed to a determination of the alternative ground for dismissal—failure of the complaint to state a claim.

Defendants have filed a statement concurring in plaintiffs' request. As previously noted, the alternative ground has been fully argued in this court and neither plaintiffs nor defendants request further argument thereon.

We agree that the Quinault Tribe of Indians is an Indian tribe of the kind described in 28 U.S.C. § 1362, and that this newly-enacted statute is applicable to cases, such as this, which are pending on appeal when the statute was enacted. Section 1362 provides a basis for jurisdiction only where the matter in controversy arises under the Constitution, laws, or treaties of the United States. In this respect the new statute is identical with the general federal question statute, 28 U.S.C. § 1331. In our opinion of September 19, 1966, we held that the complaint raises three substantial federal questions. This ruling is equally applicable to section 1362.

We therefore conclude that insofar as plaintiff Indian tribe is concerned, the district court has jurisdiction under section 1362, and that dismissal of the action as to that plaintiff may not be affirmed on jurisdictional grounds. To this extent, our opinion of September 19, 1966, is modified. As to the eight personal plaintiffs, however, the new jurisdictional statute has no application, and our earlier opinion therefore correctly disposed of the appeal insofar as they are concerned.

With regard to the Quinault Tribe of Indians we therefore turn to a consideration of the alternative ground for dismissal of the action relied upon by the district court—failure of the complaint to state a claim upon which relief can be granted.

In their complaint, plaintiffs attempt to state three claims. One of these is that, by reason of Public Law 280, described in our earlier opinion, Washington is precluded from asserting jurisdiction within Indian reservations until it first amends Article 26 of the state constitution.

Article 26 incorporates an "ordinance" prescribed by the enabling act which includes the provision that Indian lands " * * * shall remain under the absolute jurisdiction and control of the congress of the United States * * *." Section 6 of Public Law 280, under which Washington purported to act in asserting jurisdiction within Indian reservations, provides in part, that the provisions of that act shall not become effective with respect to such assumption of jurisdiction by any state " * * * until the people thereof have appropriately amended their State constitution or statutes as the case may be."

It follows, appellant argues, that since Washington's disclaimer of jurisdiction is imbedded in Article 26 of the state constitution, the method prescribed by section 6 of Public Law 280 for removing that disclaimer is to amend the constitution. Appellants point to legislative history indicating that, at the time Public Law 280 was under consideration, Congress was of the view that Washington would require an amendment of the state constitution. See 1953 U.S. Code Cong. and Admin.News, pp. 2412–2414; 99 Cong.Rec. 10782, August 1, 1953.

Inasmuch as the Washington state disclaimer of jurisdiction was set forth as Article 26 of the state constitution, it is understandable that congressional spokesmen assumed that such disclaimer could be removed only by a constitutional amendment. But the underlying concern of Congress, we think, was not that a state disclaimer be removed in any particular way, but that it be removed in some way which would be valid and binding under state law, before fed-

eral jurisdiction be relinquished. Accordingly, we do not construe this legislative history as reading into Public Law 280 a requirement that Washington can remove its disclaimer only by a state constitutional amendment.

Article 26 of the state constitution, incorporating the ordinance referred to above, constitutes a compact with the United States, and is so designated. The introductory clause of that article reads as follows:

> "The following ordinance shall be irrevocable without the consent of the United States and the *people of this state*: * * *" (Emphasis supplied.)

In State v. Paul, 53 Wash.2d 789, 337 P.2d 33, the Supreme Court of Washington upheld the validity of chapter 240, Laws of 1957, providing that Washington would extend its criminal and civil jurisdiction to Indians and Indian lands. In so doing, the court ruled that this legislative enactment represented the consent of the "people of this state," as those words are used in Article 26 of the state constitution. This ruling would be equally applicable to chapter 36, Laws of 1963, amending chapter 240, Laws of 1957. The federal courts are bound by this pronouncement as to state law.

In our opinion, these state legislative enactments, upheld as to validity by the state supreme court, are in full compliance with the federal requirements. It follows that, as to this matter, plaintiffs have failed to state a claim upon which relief can be granted.

A second claim which plaintiffs purported to state in their complaint is that the enabling act required Washington to amend its constitution before assuming jurisdiction over appellees. The enabling act contains the provision subsequently incorporated into Article 26 of the state constitution, that " * * * said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States; * * *" In an introductory clause it was provided that this disclaimer of state jurisdiction shall be manifested by a state constitutional ordinance " * * * irrevocable without the consent of the United States and the *people of said States*: * * *" (Emphasis supplied.)[1] This language too, was incorporated into Article 26.

Appellants argue that it should be held that the words "people of said States" manifest a federal requirement that Washington cannot withdraw its waiver of jurisdiction without amending its state constitution. This contention rests on the premise that, within the contemplation of Congress, a state is powerless to manifest the consent of its "people" by legislative action, but may do so only by constitutional amendment, at least where the waiver is set forth in the state constitution.

Assuming, without deciding, that this provision of the enabling act should be considered federal and not local law, we hold that it does not require that the consent of the "people" of Washington be manifested only by a constitutional amendment. As we stated above, all that concerned Congress was that the consent of the people be evidenced in some manner valid and binding under state law. The *Paul* case establishes that this was accomplished by the 1957 and 1963 legislative enactments.

The third claim which plaintiffs purport to state in their complaint is that chapter 36, Laws of 1963, amending chapter 240, Laws of 1957, is void because it represents only a partial assumption of state jurisdiction over Indian reservations, whereas Public Law 280 does not authorize partial assumption of jurisdiction.

The scope of chapter 36 is summarized in our earlier opinion, opposite note 2. We do not read that act as constituting only a partial assumption of jurisdiction. The state therein indicates its willingness to extend criminal and

---

1. The enabling act (25 Stat. 676), applies to the states of North Dakota, South Dakota, Montana and Washington.

civil jurisdiction over all Indians and Indian territory, reservations, country and lands within the state, it being provided, however, that as to some matters concerning some Indians, there must first be a tribal resolution and a gubernatorial proclamation. In chapter 240, Laws of 1957, this Indian resolution and governor's proclamation procedure applied to all exertions of state jurisdiction.

In our opinion, the indicated condition precedent to the exertion of state jurisdiction as to some matters concerning some Indians involves no violation of Public Law 280. If the Quinault Tribe of Indians feels aggrieved because state jurisdiction is not presently being exerted to the full extent possible under chapter 36, all it has to do is provide the governor with a tribal resolution of the kind called for in section 5 of that act (RCW 37.12.021). A governor's proclamation would necessarily follow, and a full exertion of state jurisdiction would be achieved.

As to the Quinault Tribe of Indians we therefore affirm on the ground that the district court did not err in holding that the complaint fails to state a claim on which relief can be granted.