CCCO–WESTERN REGION et al.,
Plaintiffs,

v.

Colonel John L. FELLOWS, Jr., et al.,
Defendants.

Civ. No. C–72–1580.

United States District Court,
N. D. California.

Dec. 31, 1972.

Robert S. Rivkin, Hansen, Jaffe & Weiss, Joseph Remcho, Charles Marson, Peter Sheehan, San Francisco, Cal., for plaintiffs.

John K. Link, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

PECKHAM, District Judge.

On July 25, 1972, five individuals, Kerry Berland, Carolyn Berland, Judith Clark, Raymond Johnson, and Vincent O'Connor, entered the Presidio on Lincoln Boulevard and began distributing leaflets which outlined ways that soldiers can leave active duty. All plaintiffs except Carolyn Berland are employees of CCCO–Western Region, an organization known for its research into

and publications concerning the draft and military organization. The pamphlet plaintiffs handed out was a publication of CCCO–Western Region.

Three of the individuals were informed by military police that they were violating the Presidio commander's regulation 210–10 which requires that prior permission of the commander be obtained before any leafletting is done. At this point, Carolyn and Kerry Berland left the premises. The others remained and were arrested under 18 U.S.C. § 1382, which charge was subsequently dismissed (§ 1382 makes it. a crime to enter a military base in violation of the commander's order that one stay off). Soon after this incident, the three plaintiffs who had stayed were given "bar letters" which are issued by Colonel Fellows, the Presidio commander, and state that their further entry on the Presidio could subject plaintiffs to prosecution under § 1382. The Berlands have not received such bar letters.

All plaintiffs now seek a declaratory judgment that the bar letters are unconstitutionally issued and void; that the parts of rule 210–10 which require prior approval of leafletting are unconstitutional; that Army regulation 210–10, which gives base commanders power to exercise prior restraint, is unconstitutional as applied to bases that have been opened to the public; and that § 1382 is similarly unconstitutional as applied to people on open bases, or that § 1382 does not apply to such people. Also, plaintiffs request preliminary and permanent injunctions restraining defendant from barring them from the Presidio for peaceful exercise of First Amendment rights. Defendants move for dismissal, or in the alternative summary judgment.

## JURISDICTION

Plaintiffs assert the jurisdiction of this court pursuant to several statutes. Defendants controvert them all. We consider the jurisdictional grounds *seriatim*.

### I. *The Administrative Procedure Act.*

■ 5 U.S.C. §§ 701, 702 (formerly § 1009) provide that except where statutes preclude it or agency discretion is involved, all persons "suffering legal wrong" or "adversely affected or aggrieved" by agency action are entitled to judicial review of that action. It is a matter of some debate whether these provisions grant to the district courts jurisdiction to hear grievances independent of any other jurisdictional ground, or merely address the scope of review available once jurisdiction is properly established pursuant to some other statutory grant. See Charlton v. United States, 412 F.2d 390, 395–396 (3d Cir. 1969) (Stahl, J., concurring). The weight of authority favors the latter view. Zimmerman v. United States, 422 F.2d 326, 330–331 (3d Cir. 1970), cert. den. 399 U.S. 911, 90 S.Ct. 2200, 26 L. Ed.2d 565, and cases cited therein. A few courts seem to have found to the contrary, but without discussing the question. *See, e. g.*, Arrow Meat Company v. Freeman, 261 F.Supp. 622, 623 (D.Or.1966). The authority in this circuit, while somewhat ambiguous, seems in accord with the majority view. Braude v. Wirtz, 350 F.2d 702, 706–708 (9th Cir. 1965).

Plaintiffs rely upon language in Citizens To Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L. Ed.2d 136 (1971), for the proposition that §§ 701, 702 are jurisdictional. But the court there seems to be addressing availability of review under the Act in light of the two exceptions explicit in § 701, not whether jurisdiction is proper at all. The court's references to Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), Brownell v. We Shung 352 U.S. 180, 185, 77 S.Ct. 252, 1 L.Ed. 225 (1956), and in a footnote, Rusk v. Cort, 369 U.S. 367, 379–380, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962), point to a conception of §§ 701, 702 as remedial rather than jurisdictional. In *Abbott*, jurisdic-

tion was proper apart from the Administrative Procedure Act, see Abbott Laboratories v. Celebrezze, 352 F.2d 286, 288 (3d Cir. 1965), and Toilet Goods Association v. Gardner, 360 F.2d 677, 679 & n. 1 (2d Cir. 1966), and the court cited *Brownell* and *Rusk*. In both those cases, jurisdiction was proper pursuant to the Immigration and Nationality Act of 1952 (369 U.S. at 372–373, 82 S.Ct. 787, 7 L.Ed.2d 809), and in *Rusk*, the court stated that "[t]he teaching of those cases [including *Brownell*] is that the Court will not hold that the broadly *remedial* provisions of the Administrative Procedure Act are unavailable to review administrative decisions under the 1952 Act in the absence of clear and convincing evidence that Congress so intended." 369 U.S. at 379–380, 82 S.Ct. at 794. (emphasis added). It is therefore this court's view that 5 U.S.C. §§ 701, 702 do not, in and of themselves, confer jurisdiction to hear this action.

## II. *Federal Question.*

■ Plaintiffs assert jurisdiction pursuant to 28 U.S.C. § 1331, alleging that the amount in controversy exceeds $10,000. The defendants traverse this allegation, however, thereby placing the burden on plaintiffs to satisfy this court that the amount in controversy requirement is indeed met. McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). Since the plaintiffs herein seek vindication of their first amendment rights via an injunction and declaratory judgment, the question becomes whether the value of those rights is in excess of $10,000. Quinault Tribe of Indians v. Gallagher, 368 F.2d 648, 654 (9th Cir. 1966). This determination is not to be lightly passed over. Lynch v. Household Finance Corporation, 405 U.S. 538, 92 S.Ct. 1113, 1119–1120, 31 L.Ed.2d 424 (1972).

It has long been recognized that in cases, like the one at bar, involving major constitutional issues, the amount in controversy requirement is especially troublesome. At one time courts took the view that because basic constitutional rights are invaluable, they could not be the subject of an accounting, and the determination required by § 1331 could never be made. Fortunately, we are no longer constrained by such contorted reasoning. *See Quinault Tribe, supra. But see* Goldsmith v. Sutherland, 426 F. 2d 1395 (6th Cir. 1970), cert. den. 400 U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 270.

■ While the valuation process in particular cases may present difficulty, this court agrees with the view expressed in Cortright v. Resor, 325 F. Supp. 797, 808–811 (E.D.N.Y.1971), revs'd. on other grounds, 447 F.2d 245, cert. den., 405 U.S. 965, 92 S.Ct. 1172, 31 L.Ed.2d 240 that fundamental constitutional rights, of which freedom of speech is one, are "almost by definition, worth more than $10,000." See also Spock v. David, 469 F.2d 1047 (3d Cir., 1972); Jenness v. Forbes, 351 F.Supp. 88 (D.R.I., 1972); Fifth Avenue Peace Parade Comm. v. Hoover, 327 F.Supp. 238, 240–242 (S.D.N.Y.1971); Murray v. Vaughn, 300 F.Supp. 688, 694–696 (D. R.I.1969). The "almost" is critical, for it acknowledges that the valuation process cannot be scrapped altogether. However unsavory the "price tag" requirement of § 1331, see West End Neighborhood Corporation v. Stans, 312 F.Supp. 1066, 1067–1068 (D.D.C.1970), it is still the task of the district courts to consider the rights sought to be protected and determine whether, in the circumstances of the case, the value of their vindication exceeds $10,000. *See* Lynch v. Household Finance Corporation, *supra.*

■ In the case at bar, plaintiffs seek to protect their right to disseminate their views and information concerning discharge from military service. The issues involved are of widespread public concern. This is not a case involving only a very narrow aspect of speech, generally regarded as of limited value at best. *See, e. g.,* Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). The speech for which plaintiffs seek protection here

has traditionally been regarded as fundamental, "the indispensible condition of nearly every other form of freedom." Palko v. Connecticut, 302 U.S. 319, 327, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). In these circumstances, this court finds that "the allegation of jurisdiction based upon § 1331 ought not be subject to denial." Cortright v. Resor, *supra*.

### III. *Mandamus.*

■ Plaintiffs ask this court to compel "an officer . . . of the United States . . . to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Whereas mandamus jurisdiction will not lie to determine the course of exercise of discretion, where such exercise violates constitutionally protected rights, the courts may intervene. Mead v. Parker, 464 F.2d 1108 (9th Cir., 1972); Cortright v. Resor, 447 F.2d 245, 250–251 (2d Cir. 1971); Kauffman v. Secretary, 135 U.S.App.D.C. 1, 415 F.2d 991, 994–995 (1969); Smith v. McNamara, 395 F.2d 896, 899 (10th Cir. 1968); Ashe v. McNamara, 355 F.2d 277, 282 (1st Cir. 1965). *See also* discussion in Marquez v. Hardin, Opinion and Order of September 5, 1969 (N.D. Cal.1969). "It should, then, be the approach of this court to examine the actions of the defendants to determine whether they transgressed plaintiff's rights under the Constitution. If they did so, then mandamus will issue as to them." Murray v. Vaughn, *supra*, 300 F.Supp. at 697. Since this court's jurisdiction is properly predicated upon 28 U.S.C. § 1331, it need not decide, nor does it, whether mandamus jurisdiction likewise is proper.

### IV. *All Writs.*

■ Jurisdiction is present under 28 U.S.C. § 1651 only because it is found elsewhere. This section is not an independent source of jurisdiction. Mead v. Parker, *supra*; Benson v. State Board of Parole and Probation, 384 F.2d 238 (9th Cir. 1967).

### V. *Declaratory Judgment Act.*

■ As with the Administrative Procedure Act and the All Writs statute, 28 U.S.C. §§ 2201, 2202 do not confer, of themselves, jurisdiction on this court. Van Buskirk v. Wilkinson, 216 F.2d 735 (9th Cir. 1954). Jurisdiction having been found elsewhere, however, relief in the form of a declaratory judgment, if appropriate, is available.

### SOVEREIGN IMMUNITY

■ ■ Defendants interpose a defense of sovereign immunity. This defense is unavailable, however, where an officer acts outside the scope of his authority, or, if acting within that scope, nevertheless exercises his authority in a manner infringing constitutionally protected rights. Dugan v. Rank, 372 U.S. 609, 620–22, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Malone v. Bowdoin, 369 U.S. 643, 647, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962). Plaintiffs have alleged activity by federal officers which infringes their first amendment rights; hence, sovereign immunity is no bar to this action.

### STANDING

Defendants contest the standing of plaintiffs CCCO–Western Region, and Kerry and Carolyn Berland to maintain suit at this time. They argue that CCCO has no direct interest in this litigation, and that the Berlands present no justiciable controversy because they have not been presented with a bar order. Defendants rely upon Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed. 2d 154 (1962). This court believes that CCCO and the Berlands may maintain this action under these holdings.

■ The test for CCCO, as stated by the United States Supreme Court in Sierra Club v. Morton, *supra*, is

"whether the party has alleged such a 'personal stake in the outcome of the controversy,' Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, as to ensure that 'the dispute sought to be adjudicated will be presented in an

adversary context and in a form historically viewed as capable of judicial resolution.' Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947. . . . . " *Id.*, 405 U.S. at 732, 92 S.Ct. at 1364, 31 L.Ed.2d at 641. CCCO has a stake in the outcome of this controversy in that its members are being threatened with prosecution for distributing leaflets of its own publication, and in furtherance of objectives it fosters. The effectiveness of CCCO's work is obviously at stake in an action seeking to vindicate the rights of its members to distribute its literature. CCCO has standing to use.

 Defendants quote from the decision in Laird v. Tatum, *supra*, to support their position regarding the Berlands:

> "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm *or a threat of specific future harm;* . . . . " *Id.*, 408 U.S. at 13, 92 S.Ct. at 2326, 33 L.Ed.2d at 163–164 (emphasis added).

They seem to overlook the italicized language, however, which recognizes that allegations of chilling effect based upon threats of specific future harm do present a justiciable question to the court. Here, the Berlands allege the incidents leading to the issuance of bar letters to their friends. They allege that if they proceed to distribute leaflets on the Presidio, in accordance with what they perceive to be their constitutional rights, they too will receive bar letters and thereafter be subject to criminal prosecution on reentry. They are, in other words, one visit away from the immediate threat of criminal prosecution to which the other individual plaintiffs in this suit have been subjected. The Berlands are equally deterred with the other plaintiffs from entering the Presidio and distributing leaflets. It is no solace to them, in light of their objectives, to say that the Berlands "are not chilled in the exercise of any First Amendment rights outside the Presidio."

(Defendants'· Memorandum in Support of Motion to Dismiss, p. 27). This court finds that the Berlands present a justiciable controversy and are properly parties to this action, under the holding in Laird v. Tatum, *supra*.

## THE MERITS

Plaintiffs argue for their relief in light of the recently decided Flower v. United States, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972), which reversed a conviction under § 1382 where the circumstances were quite similar to those here. In Flower, the plaintiff leafleted at Fort Sam Houston, an army base with a local regulation similar to that in the instant case. The Fort was found by the Supreme Court to be an "open base" in that it was open to public traffic on roadways, and had facilities on base that the public could use. Also, no guards or sentries were posted to check in-coming or out-going traffic. The court found that the Fort commander had "abandoned" any right he· might have had to restrict exercise of first amendment rights on the base. *Id.*, 407 U.S. at 197–199, 92 S.Ct. at 1842–1843, 32 L.Ed.2d at 655–656.

The concept underpinning *Flower* was that in being "open" the base was quasi-public, in the sense that rigid security protection was not thought necessary; the commander's restrictions on speech were not prompted by a legitimate concern for the internal security of the base. This situation is to be distinguished from that of the prior leading case concerning restricting private action on a military base, Cafeteria and Restaurant Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed. 1230 (1961). There, an employee was not able to get her job back on the base because she failed to gain security clearance. The base was a naval weapons plant, with tight security, guards, and ID badges. In the case at bar, as in *Flower*, security measures of this sort are not present; no compelling rationale exists for limiting the exercise of rights by the freely admitted public.

In terms of its "openness" and all other characteristics, the Presidio seems indistinguishable from Fort Sam Houston.[1] Defendants attempt to argue that *Flower* was based on a rationale of a base or fort having assumed a "municipal" character, and that the Presidio's routes are not quite as essential to the flow of traffic in San Francisco as were those of the Fort to the city of Houston. However, it is clear from the Fifth Circuit opinion in *Flower* and from a reading of the Supreme Court's opinion that it is the opening of the base to public use—the base's streets becoming like a city's public streets—that is important, *not* the assuming of some "public function" by the base, as the defendant argues.

For this reason, defendant's heavy reliance on Lloyd Corp. v. Tanner, 407 U. S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), is misplaced. *Lloyd* is the Supreme Court's retreat from Amalgamated Food Employees Union v. Logan Valley Plaza, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). In *Lloyd*, a privately owned shopping center mall was said to be unavailable for general picketing or leafletting that was not directed at activities taking place therein. *Logan Valley*, involving another private shopping center, was distinguished on the ground that there the picketing was directed at one of the Center's stores, and the picketers had no other easy way to communicate their message to shoppers.

■ By the terms of *Lloyd*, the instant case is distinguishable, since the leaflets were directed at the soldiers of the Presidio, and there was no other

---

1. The Supreme Court in *Flower* quoted a description of the "open" character of Fort Sam Houston:

"There is no sentry post or guard at either entrance or anywhere along the route. Traffic flows through the post on this and other streets 24 hours a day. A traffic count conducted on New Braunfels Avenue . . . shows a daily (24 hour) vehicular count of 15,110 south of Grayson Street . . . and 17,740 vehicles daily north of that point. The street is an important traffic artery used freely by buses, taxi cabs and other public transportation facilities as well as by private vehicles, and its sidewalks are used extensively at all hours of the day by civilians as well as by military personnel." *Flower, supra,* 407 U.S., at 198, 92 S.Ct. at 1843, 32 L.Ed.2d at 655.

Defendants' Memorandum opposing plaintiffs' motion for preliminary injunction at page 11 indicates a daily traffic flow along Lincoln Boulevard of 14,700 vehicles. It is uncontested that there are no sentries or guards at any of the Presidio entrances, that traffic flows through the post 24 hours a day, that the sidewalks are used extensively by civilians, that Lincoln Boulevard is used by all modes of public and private transportation, and that the post cafeteria, bank, and chapels are freely accessible to the public. In addition, thousands of tourists visit the Presidio each month to inspect Fort Point, an historical monument, or to enjoy the open spaces and greenery the Presidio grounds provide. A brochure published by the Presidio's Information Office states:

"For the enjoyment of visitors and military personnel the Presidio offers a six-mile hiking trail, marked by Boy Scouts, including many historic points of interest. Stretching through the Presidio there are more than 70 miles of scenic trails, paths and roads used by hikers as well as the daily commuter." Plaintiffs' Exhibit E.

Defendants in their Memorandum in opposition, *supra,* at p. 8 state:

"Defendants agree that the Presidio is one of the scenic tourist attractions of San Francisco. The Presidio's rich military heritage includes among other items of interest the oldest building in San Francisco—now the Presidio Officer's Club, the ancient bronze muzzle loaded cannon still preserved with its Spanish inscriptions which was rendered inoperable during the Bear Flag Revolt in 1846 by Kit Carson, the Chapel of Our Lady—still in use with its finely preserved hand-painted rafters, and the tallest flagpole in San Francisco which is embedded into what was once the foundation of the 1914–15 home of the only General of the Armies of the United States—General John J. Pershing, as well as an enchantingly picturesque view of the Pacific Ocean, the Golden Gate Bridge, Alcatraz Island, the Alabastrine city of San Francisco, and the San Francisco Bay."

easy way to reach that constituency. However, the court need not rely on such distinctions in this case, since we are not here dealing with a privately owned facility, one which is protected by traditional notions of property rights; we have instead a government-owned and controlled area, a military base. As the Supreme Court decided in *Flower*, the ability of the commander to restrict public activity on such a facility depends on the extent to which security is consciously sought and required. Where, as here, internal security for all other purposes is set aside in favor of public use, one phase of that use—free expression —however distasteful to the commander, cannot be curtailed by a resort to the rationale of "protection of the base".

It is therefore ordered that a preliminary injunction issue, directing the defendant Fellows, as commander of the Presidio, to permit plaintiffs herein access to the Presidio grounds for purposes not inconsistent with the terms of this opinion, and suspending the effect of the commander's regulation 210–10 and Army regulation 210–10, pending the final adjudication of this action.