Peter K. Mair, Asst. U. S. Atty., Seattle, Wash., for defendant-appellant.

William J. Bender, Asst. Federal Public Defender, Seattle, Wash., for plaintiff-appellee.

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Russell LAWRENCE,
Defendant-Appellant.**

**No. 78–1543.**

United States Court of Appeals,
Ninth Circuit.

April 26, 1979.

Before WRIGHT and ANDERSON, Circuit Judges, and TAKASUGI,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Appellant James Russell Lawrence, an Indian, was convicted of assault with intent to commit rape in violation of 18 U.S.C. §§ 1153 and 113(a) (1976). Lawrence challenges the jurisdiction of the district court

---

* The Honorable Robert M. Takasugi, United States District Judge for the Central District of California, sitting by designation.

on the ground that Washington's retrocession to the United States of jurisdiction over the Suquamish Port Madison Indian Reservation was invalid under state and federal law. We disagree and find that the district court's exercise of jurisdiction was proper.

## I.

### Background

In 1953, Congress enacted legislation to effectuate the transfer to the states of jurisdiction over criminal offenses and civil causes of action committed or arising in Indian country within the states. Act of Aug. 15, 1953, Pub.L. No. 83–280, 67 Stat. 588 (hereinafter Pub.L. 280). Immediate

1. Section 2(a) provides:

   "Each of the States listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over offenses committed elsewhere within the State, and the criminal laws of such State have the same force and effect within such Indian country as they have elsewhere within the State:

   | State of | Indian country affected |
   | --- | --- |
   | California | All Indian country within the State |
   | Minnesota | All Indian country within the State, except the Red Lake Reservation |
   | Nebraska | All Indian country within the State |
   | Oregon | All Indian country within the State, except the Warm Springs Reservation |
   | Wisconsin | All Indian country within the State, except the Menominee Reservation" |

   Pub.L. 280, § 2(a) (current version at 18 U.S.C. § 1162(a) (1976)).
   Section 4(a) provides:

   "Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State:

jurisdiction was given to California, Minnesota, Nebraska, Oregon, and Wisconsin, the "mandatory" states. *Id.* §§ 2 and 4.[1] The remaining states, the "option" states, were permitted to assume jurisdiction at their election. *Id.* § 7.[2] Because some states, including Arizona, Montana, New Mexico, North Dakota, Oklahoma, South Dakota, Utah and Washington, had constitutions or statutes containing disclaimers of jurisdiction, those "disclaimer" states were given permission "to remove any legal impediment to the assumption of civil and criminal jurisdiction." *Id.* § 6.[3]

Pursuant to this Act, the Washington legislature passed a law obligating Washington to assume civil and criminal jurisdiction

| State of | Indian country affected |
| --- | --- |
| California | All Indian country within the State |
| Minnesota | All Indian country within the State, except the Red Lake Reservation |
| Nebraska | All Indian country within the State |
| Oregon | All Indian country within the State, except the Warm Springs Reservation |
| Wisconsin | All Indian country within the State, except the Menominee Reservation." |

Pub.L. 280, § 4(a) (current version at 28 U.S.C. § 1360(a (1976)).

2. Section 7 provides:

   "The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof."
   Pub.L. 280, § 7 (repealed 1968) (current version at 25 U.S.C. §§ 1321, 1322 (1976)).

3. Section 6 provides:

   "Notwithstanding the provisions of any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, there State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this Act: *Provided*, That the provisions of this Act shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amend-

over Indian land within the state whenever any affected tribe so requested.[4] Upon assent by the Suquamish on May 15, 1958, state jurisdiction was extended to the Suquamish Port Madison Reservation.

Indian tribes were critical of Pub.L. 280 because section 7 authorized the application of state law to tribes without their consent and regardless of their needs or circumstances. *See* [1968] U.S.Code Cong. & Admin.News, pp. 1837, 1865 (Additional Views of Mr. Erwin). Consequently, in 1968 Congress repealed section 7, though the repeal was not to affect any previous cession of jurisdiction under section 7. 25 U.S.C. § 1323(b) (1976). Congress also required any state not having civil or criminal jurisdiction over Indian tribes to obtain the consent of the tribes before assuming such jurisdiction. 25 U.S.C. §§ 1321(a), 1322(a) (1976). In addition, Congress authorized the United States to accept a retrocession from any state of all or any jurisdiction acquired by such state pursuant to Pub.L. 280. 25 U.S.C. § 1323(a) (1976).

On August 25, 1971, in response to a request by the Suquamish, the Governor of Washington, by proclamation, retroceded to the United States jurisdiction over the Suquamish Port Madison Indian Reservation. On April 14, 1972, in accordance with the authority granted him, *see* Exec. Order No. 11435, 3 C.F.R. 752 (1966–70 Compilation), *reprinted in* 25 U.S.C. § 1323 note, at 1217 (1976), the Secretary of the Interior accepted the retrocession. 37 Fed.Reg. 7353 (1972).

## II.

### *Validity of Retrocession Under State Law*

Lawrence contends that the Governor's proclamation of retrocession was invalid under state law because it was not authorized by appropriate legislation.

ed their State constitution or statutes as the case may be."
Pub.L. 280, § 6, 67 Stat. 588 (1953).

4. The validity of Washington's assumption of jurisdiction has been previously challenged on the ground that the disclaimer clause in the Washington Constitution was not properly amended. The legislative procedure was up-

Lawrence acknowledges that this contention has been decided adversely to him in *Oliphant v. Schlie*, 544 F.2d 1007 (9th Cir. 1976), *rev'd. on other grounds sub nom., Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978). He nevertheless urges us to reconsider the matter here. However, Lawrence cites no grounds or authority for his proposition that the issue was wrongfully decided and we find no fault with the court's determination that

"The question is one of federal law, not state law. The acceptance of the retrocession by the Secretary, pursuant to the authorization of the President, made the retrocession effective, whether or not the Governor's proclamation was valid under Washington law."

544 F.2d at 1012.

In so holding in *Oliphant,* this court relied on *United States v. Brown*, 334 F.Supp. 536 (D.Neb.1971) and *Omaha Tribe v. Village of Walthill*, 334 F.Supp. 823 (D.Neb.1971), *aff'd*, 460 F.2d 1327 (8th Cir. 1972), *cert. denied*, 409 U.S. 1107, 93 S.Ct. 898, 34 L.Ed.2d 687 (1973). We find the reasoning of those cases still persuasive and perceive no justification for disturbing the determination that federal law controls. We therefore reject as immaterial the contention that the retrocession was invalid under state law.

## III.

### *Validity of Retrocession Under Federal Law*

Lawrence also argues that the retrocession was invalid because the federal retrocession statute, 25 U.S.C. § 1323(a) (1976), does not apply to the disclaimer states.

Section 1323(a) provides:

"The United States is authorized to accept a retrocession by any State of all or

held by the Washington Supreme Court in *State v. Paul*, 53 Wash.2d 789, 337 P.2d 33 (1959). In *Washington v. Confederated Bands and Tribes of the Yakima Indian Nation*, —— U.S. ——, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979), the Supreme Court agreed that Washington's assumption of jurisdiction complied with the requirements of section 6 of Pub.L. 280.

any measure of the criminal or civil jurisdiction, or both, acquired by such State pursuant to the provision of section 1162 of Title 18, section 1360 of Title 28, or section 7 of the Act of August 15, 1953 (67 Stat. 588), as it was in effect prior to its repeal by subsection (b) of this section."

Lawrence claims that Washington acquired jurisdiction over Indian country within the state pursuant to section 6 and not section 7 of Pub.L. 280, and thus, under the terms of section 1323(a), could not retrocede jurisdiction to the United States. Section 6 permits removal of any legal impediments to the transfer of jurisdiction. Section 7 prescribes the action necessary for the assumption of jurisdiction.

It is undisputable that "[b]ecause of Washington's constitutional disclaimer of jurisdiction over Indians, section 6 of Public Law 280 is applicable to that state." *Quinault Tribe of Indians v. Gallagher*, 368 F.2d 648, 651 (9th Cir. 1966). *See Washington v. Confederated Bands and Tribes of the Yakima Indian Nation*, ——— U.S. ———, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979). Lawrence in effect suggests that section 6 of Pub.L. 280 must be read as an alternative to section 7. But it is our view that section 7 extends to the disclaimer group of option states and that section 6 must be interpreted in conjunction with section 7.[5] We find this view bolstered in *Confederated Bands*, where the Supreme Court exhaustively examined the applicability of sections 6 and 7 to the State of Washington.

As the Supreme Court observed in *Confederated Bands*, section 6 "was essentially an afterthought designed to accomplish the limited purpose of removing any barrier to jurisdiction posed by state organic law disclaimers of jurisdiction over Indians." 99 S.Ct. at 759. In permitting the removal of such disclaimers, section 6 specified that civil and criminal jurisdiction was to be assumed "in accordance with the provisions of this Act." The Supreme Court rejected the argument that the automatic transfer provisions of sections 2 and 4 applied to the disclaimer states upon the elimination of any legal impediments to the assumption of jurisdiction. Thus, the mere removal of disclaimers was not enough to effect an immediate transfer of full jurisdiction. Instead, the disclaimer states, like the other option states, had to take affirmative legislative action to obligate and bind the states to assume jurisdiction. *See* 99 S.Ct. at 751, 755–60. In *Kennerly v. District Court*, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1970) (per curiam), the Supreme Court held that Montana, also a disclaimer state, had to comply with section 7 of Pub.L. 280 in order to assume jurisdiction over the Blackfoot Reservation.

The State of Washington therefore acquired jurisdiction over Indian reservations within its boundaries pursuant to the provisions of sections 6 and 7. Accordingly, the terms of section 1323(a) present no obstacle to Washington's retrocession to the United States of jurisdiction over the Suquamish Port Madison Indian Reservation. Moreover, there is nothing in the legislative history to suggest that Congress intended to deny to the disclaimer group of option states the right to retrocede jurisdiction. Nor can we perceive any reason for the disclaimer states to be treated differently from the mandatory states or the other option states.

Washington's retrocession was valid under federal law. Jurisdiction properly rested in the district court. Lawrence's conviction is therefore

AFFIRMED.

---

5. We are not the first to express this view. *See Confederated Bands and Tribes of the Yakima Indian Nation v. Washington*, 550 F.2d 443, 451 n.6 (9th Cir. 1977) (en banc) (Hufstedler, J., dissenting).